**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _11- 22 -16_

BARRY BATSON, et al.,

                                    **Plaintiffs,**

            -against-

RIM SAN ANTONIO ACQUISITION, LCC, et al.,

                                    **Defendants.**

15-cv-07576 (ALC)

<u>**OPINION AND ORDER**</u>

**ANDREW L. CARTER, JR., United States District Judge:**

Defendants RIM San Antonio Acquisition, LLC, RIM Investment Group, LLC, Bighorn

Capital, Inc., Scott Morgan, and Robert Entler (collectively, the "RIM Defendants") have moved

to dismiss Plaintiffs' federal securities law claim pursuant to Federal Rule of Civil Procedure

12(b)(6). The RIM Defendants also have asked the Court to dismiss the state and common law

claims against them for lack of subject matter jurisdiction if their motion to dismiss the federal

cause of action is granted. Defendant Sichenzia Ross Friedman Ference, LLP ("Sichenzia") also

has moved to dismiss the Complaint for failure to state any claims against it. For the following

reasons, the RIM Defendants' motion is granted in part and denied in part and Sichenzia's

motion is granted.

## BACKGROUND

### I.   Factual Background

The following facts are taken from the allegations contained in the Second Amended

Complaint ("SAC") and the parties' declarations submitted in connection with the instant

motions to dismiss.[1]

---

[1] Sichenzia's counsel filed a declaration in support of its motion to dismiss, *see* ECF No. 65 (Declaration of Mark
K. Anesh, dated Mar. 2, 2016 ("Anesh Decl.")), and another declaration with Sichenzia's reply brief. ECF No. 76

Plaintiffs Barry Batson, David Douthat, William Langer Gokey, the William Langer and Susan Flickinger Gokey Foundation, Inc., Quentin Kramer, Charles Mortimer, Michael Solkow, James Wilson, as Trustee for the James D. Wilson Trust, and Worthington Enterprises, Inc. (collectively, "Plaintiffs") were investors in a private offering by defendant RIM San Antonio Acquisition, LLC ("RIM") in connection with the construction of "The RIM," a proposed apartment complex development in San Antonio, Texas (the "Offering"). SAC ¶¶ 20, 23, 26-48. Each of the Plaintiffs became aware of the Offering in April or May 2013 through solicitations by defendant John Carris Investments, LLC ("John Carris"), then a New York-based investment banking firm that served as the exclusive placement agent for the Offering. *Id.* ¶¶ 21, 24, 26-48. After the initial solicitations, John Carris sent each of the Plaintiffs a copy of the Offering Memorandum, which they reviewed. *Id.* ¶ 50.[2] Plaintiffs then sent their investments in the Offering to defendant Sichenzia to hold in escrow. *Id.* ¶¶ 28, 31, 34, 37, 40, 42, 46, 48.

The Offering Memorandum, dated April 15, 2013, offered 10% promissory notes, secured by a first priority interest against RIM's assets. *Id.* ¶ 57. The Offering was subject to a minimum of $1.5 million (the "Minimum Offering Amount") and a maximum of $8.5 million, and the Offering Memorandum described how the investments received would be used at various investment thresholds. *Id.* ¶¶ 55-56; Offering Memo. at 20.

The Offering closed on May 13, 2013, before the end of the 45-day offering period as stated in the Offering Memorandum. SAC ¶ 67. RIM raised $1,310,800, excluding a $500,000

---

(Declaration of Mark K. Anesh, dated Apr. 8, 2016). Counsel for the RIM Defendants also filed a declaration in support of their motion to dismiss. ECF No. 71 (Declaration of Catherine E. Gaither, dated Mar. 4, 2016 ("Gaither Decl.")). Plaintiffs' counsel filed a single declaration in opposition to both of the motions to dismiss. ECF No. 75 (Declaration of James Ruiz, dated Apr. 1, 2016 ("Ruiz Decl.")).

[2] The Offering Memorandum, dated April 15, 2013, which forms the basis for the majority of Plaintiffs' claims is attached as an exhibit to each of the parties' declarations. *See* Anesh Decl., Ex. B; Gaither Decl., Ex. A; Ruiz Decl., Ex. A. For ease of reference, the Court will cite to the Offering Memorandum as "Offering Memo.," rather than as an exhibit to any particular attorney's declaration.

investment by William Gunn, one of the real estate project's developers. *Id.* ¶¶ 53, 60, 64; Offering Memo. at 4. Although the Offering closed, RIM did not purchase the property on which the apartment complex was to be built (the "Property"). SAC ¶ 59. Plaintiffs allege that the RIM Defendants intentionally allowed the purchase option on the Property—which expired on May 15, 2013, *see* SAC ¶ 80—to lapse, including by failing to secure an extension of the purchase option that had been negotiated by Gunn. *Id.* ¶¶ 61-62.

Plaintiffs further allege that the Offering did not reach the Minimum Offering Amount, yet Sichenzia followed instructions from defendant Scott Morgan, a managing member of RIM, and defendant Robert Entler, the founder and president of the project's financier, defendant Bighorn Capital, Inc., to release funds from escrow to an account held by defendant RIM Investment Group, LLC, instead of returning those funds to Plaintiffs. *Id.* ¶¶ 20, 66-67, 80. On Plaintiffs' information and belief, some portion of the funds then was transferred from the RIM Investment Group account to accounts controlled by Morgan and Entler and used to pay for legal fees and other expenses from an unrelated real estate venture by Morgan. *Id.* ¶¶ 73, 83.

Plaintiffs did not receive promissory notes reflecting their investments in the Offering until mid-September 2013, well after the 15-day time frame promised in their subscription agreements. *Id.* ¶¶ 65, 68. Plaintiffs assert that this delay was designed to conceal that Sichenzia had not obtained signed security agreements from RIM before it released funds from escrow and that RIM had not purchased the Property. *Id.* ¶ 70. The RIM Defendants did not otherwise inform Plaintiffs that they had not purchased the Property. *Id.* ¶ 80. By the time Plaintiffs received their promissory notes, their investments were no longer held in escrow by Sichenzia. *Id.* Plaintiffs assert that the promissory notes they received did not contain a security interest in

RIM's assets and therefore, they had no interest on which to foreclose to recover their money. *Id.* ¶ 69, 84.  They initiated this action as a result.

## II.      Procedural History

Plaintiffs initiated this action in the Western District of Texas on May 7, 2015.  ECF No. 1.  Plaintiffs subsequently amended their complaint on July 9, 2015.  ECF No. 18.  By order dated September 17, 2015, the Honorable Robert L. Pitman directed that this case be transferred to the Southern District of New York, where it was assigned to this Court.  ECF No. 31.

In December 2015, Plaintiffs filed a motion for leave to file a second amended complaint. ECF Nos. 49, 51-52.  The Court granted Plaintiffs' motion over Defendants' objections, and, as a result, the SAC is the operative pleading at issue in the pending motions to dismiss.  *See* ECF No. 60.  The SAC alleges causes of action against the RIM Defendants under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, in addition to claims under seven states' securities laws and common law against varying combinations of the other Defendants.  ECF No. 61.

In March 2016, Sichenzia and the RIM Defendants each filed motions to dismiss the SAC.  ECF Nos. 64-66, 70-72.  On April 1, 2016, Plaintiffs filed their opposition to each of the motions.  ECF Nos. 73-75.  The motions were fully submitted on April 8, 2016.  ECF Nos. 76-77, 78.[3]

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[3]  To date, defendant John Carris has not appeared in this action.

570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the Court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to

show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly,

where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops

short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting

*Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the

complaint and draws all reasonable inferences in the plaintiff's favor.  *See Goldstein v. Pataki*,

516 F.3d 50, 56 (2d Cir. 2008).  However, the court need not credit "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678,

681 (citing *Twombly*, 550 U.S. at 555).  Instead, the complaint must provide factual allegations

sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it

rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007)

(citing *Twombly*, 550 U.S. at 555).

In addition to the factual allegations in the complaint, the court also may consider "the

documents attached to the complaint as exhibits, and any documents incorporated in the

complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57,

64 (2d Cir. 2010) (citation and internal quotation marks omitted).  Where these documents

contradict the allegations in a complaint, the court need not accept those conclusory allegations

as true. *See I. Meyer Pincus and Assoc. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir.

1991); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004);

*Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).

Where, as here, a plaintiff has alleged fraud claims under § 10(b) of the Exchange Act and the common law, the complaint is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (the "PSLRA"). Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud or mistake." To satisfy the particularity requirement, a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (citation and internal quotation marks omitted).

The PSLRA holds private securities plaintiffs to an even more stringent pleading standard. Under the PSRLA, a plaintiff must "(1) specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (internal citation and quotation marks omitted) (quoting 15 U.S.C. § 78u-4(b)). To determine that an inference of scienter is strong, the court must decide whether "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc.*, 551 U.S. at 324.

## DISCUSSION

### I.      Section 10(b) Claim against the RIM Defendants

Plaintiffs assert a securities fraud claim against the RIM Defendants under § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. SAC ¶¶ 75-87. To state a claim under

§ 10(b) and Rule 10b-5, a plaintiff must allege that the defendant "(1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007).

Plaintiffs assert that their losses in this failed real estate venture were the result of several misstatements and omissions in the Offering Memorandum attributable to the RIM Defendants. In particular, Plaintiffs allege that the Offering Memorandum contained the following misrepresentations or omissions:

1. the Offering was subject to a minimum raise of $1.5 million in notes;
2. $500,000 already had been invested towards the Offering;
3. Plaintiffs' funds would be returned to them if the Offering did not reach the Minimum Offering Amount;
4. if the Offering terminated without closing, Plaintiffs' funds would be returned to them;
5. the offering period would last 45 days from the date of the Offering Memorandum, April 15, 2013;
6. how RIM would use Plaintiffs' investments;
7. the promissory notes issued to investors would include a security interest in RIM's assets;
8. the RIM Defendants failed to inform Plaintiffs that the purchase option on the Property had expired without closing; and
9. the RIM Defendants failed to inform Plaintiffs that RIM previously had been unable to close on the Property.

SAC ¶¶ 71, 78-85. Plaintiffs also allege that, as a general matter, the Offering Memorandum itself was a fraud because the RIM Defendants never intended to purchase and develop the Property as detailed in the Offering Memorandum. SAC ¶ 61.

In their motion to dismiss, the RIM Defendants argue that many of the alleged misrepresentations and omissions identified by Plaintiffs are contradicted by the Offering Memorandum. They further argue that, with respect to certain of the alleged misrepresentations and omissions, Plaintiffs failed to plead the underlying facts with the requisite particularity and

that Plaintiffs failed to plead sufficiently loss causation, transaction causation, and/or scienter. The Court will address each of these arguments in turn.

A. **Certain Alleged Misrepresentations and Omissions Are Contradicted by the Offering Memorandum**

1. *Alleged Misrepresentations Regarding the Minimum Offering Amount*

The dispute between Plaintiffs and the RIM Defendants on this motion to dismiss centers, in large part, on each party's definition of the Minimum Offering Amount. Plaintiffs assert that Gunn's $500,000 equity investment should have been excluded from the calculation of whether the $1.5 million Minimum Offering Amount had been reached, and therefore, the Offering Memorandum falsely stated that (1) the Offering was subject to a minimum raise of $1.5 million *in notes*; (2) $500,000 already had been invested towards the Offering; (3) Plaintiffs' funds would be returned to them if the Offering did not reach the Minimum Offering Amount; and (4) if the Offering terminated without closing, Plaintiffs' funds would be returned to them. Plaintiffs also allege that issuing promissory notes to them was an implicit—and false— representation that the Minimum Offering Amount had been achieved.

The RIM Defendants argue that the Offering Memorandum explicitly states that Gunn's $500,000 investment was included in determining whether the Minimum Offering Amount had been reached and therefore Plaintiffs' claims of misrepresentations to the contrary are contradicted by the terms of the Offering Memorandum. ECF No. 72 (RIM Defendants' Memorandum of Law in Support of their Motion to Dismiss ("RIM Defs.' Memo.")), at 9-10. The Court has reviewed the Offering Memorandum, incorporated by reference into the SAC, and agrees with the RIM Defendants. Accordingly, the RIM Defendants' motion to dismiss the portion of Plaintiffs' § 10(b) claim based on these alleged misrepresentations is granted.

As mentioned above, the Court need not accept as true allegations in the SAC that are directly contradicted by documents incorporated by reference into the SAC. *See, e.g.*, *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d at 555. The Court of Appeals for the Second Circuit noted that "[t]his principle has its greatest applicability in cases alleging fraud" because the plaintiff often alleges that particular documents filed with the SEC or given to investors misrepresented or failed to disclose certain facts. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Therefore, it "is appropriate for the court . . . to examine the document to see whether or not those facts were disclosed." *Id.* Indeed, courts in this Circuit frequently have applied this principle to dismiss claims alleging securities fraud where the allegations were contradicted by statements in the offering memorandum, prospectus, or other investor materials. *See, e.g.*, *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (upholding dismissal of § 10(b) claims contradicted by defendants' tender offer documents); *Levy v. Maggiore*, 48 F. Supp. 3d 428, 453 (E.D.N.Y. 2014) (dismissing portion of § 10(b) claim where alleged misrepresentation was contradicted by language in private placement memorandum); *Emps.' Ret. Sys. of Gov't of Virgin Is. v. Morgan Stanley & Co.*, 814 F. Supp. 2d 344, 353 (S.D.N.Y. 2011) (dismissing state law fraud claim where offering memorandum stated that defendant had not drafted it); *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 185-88 (S.D.N.Y. 2000) (dismissing Securities Act claims based on allegation that offeror guaranteed compliance with Chinese law where prospectus made less forceful promise).

Here, although Plaintiffs did not attach the Offering Memorandum as an exhibit to the SAC, they allege that the Offering Memorandum contains the complained-of misrepresentations. Accordingly, the Court may properly consider it. Notwithstanding the centrality of the Offering Memorandum to Plaintiffs' claims, however, Plaintiffs did not identify the exact statements

within the document that they allege are materially misleading with regard to Minimum Offering Amount. *See, e.g.,* SAC ¶¶ 55, 78, 81. On the Court's own review of the Offering Memorandum, the document provides that the Offering was subject to "the sale of a minimum of $1,500,000 in Notes in the Offering." Offering Memo. at 4; *see also id.* at 27 ("[W]e are offering for sale a minimum of $1,500,000 and a maximum of $8,500,000 of Promissory Notes."). However, elsewhere in the document, it provides that "$500,000 is currently deposited with Heritage Title Company of Austin, Inc. These moneys will be applied towards the Minimum Offering [Amount]." *Id.* at 35; *see also id.* at 36 (funds deposited "with Heritage Title Company of Austin . . . will be used towards the Minimum Offering [Amount]").

While, as Plaintiffs contend, the first provisions cited appear to limit the calculation of the Minimum Offering Amount to include only investments received through the Offering in exchange for promissory notes, the second provisions cited make it clear that the $500,000 already received as of the date of the Offering Memorandum would be applied towards a determination as to whether the Minimum Offering Amount had been reached. Plaintiffs do not address these latter provisions nor do they explain how they are consistent with their assertion that the Offering Memorandum misrepresented that Gunn's $500,000 was excluded from the Minimum Offering Amount.

Further, Plaintiffs concede that, with Gunn's $500,000 investment included, the Offering closed with more than $1.5 million invested. *See* SAC ¶¶ 60, 64. As a result, RIM was under no obligation under the terms of the Offering Memorandum to return Plaintiffs' investments to them because the Offering did, in fact, reach the Minimum Offering Amount. The statements in the Offering Memorandum regarding RIM's responsibilities to Plaintiffs if the Minimum Offering Amount was not reached or the Offering terminated without closing cannot be materially

misleading because those provisions were not triggered.  Plaintiffs' related claim that issuing promissory notes to them was an "implicit representation" that the "Minimum Offering [Amount] was reached and all preconditions were met, which they were not" fails for the same reason.  *See* SAC ¶ 85.[4]

Accordingly, the portion of Plaintiffs' § 10(b) claim based on alleged misrepresentations regarding the Minimum Offering Amount and any consequences of the failure to raise that amount is dismissed as contradicted by the Offering Memorandum.

2.   *Alleged Misrepresentations Regarding the Offering Period and Time to Purchase the Property*

Plaintiffs' claim based on the contention that the RIM Defendants "misled Plaintiffs as to the terms of the options to purchase the [P]roperty" also is dismissed as contradicted by the Offering Memorandum.  *See* SAC ¶ 79.  Plaintiffs assert that they were led to believe that the Offering had "more than two weeks longer to obtain financing than it in fact did" because the Offering period expired 45 days after the April 15, 2013 issue date of the Offering Memorandum, while the purchase option on the Property expired on May 15, 2013.  *Id.* However, the purchase and sale agreement for the Property is part of the Offering Memorandum and provides that "in no event shall the Closing Date extend beyond May 15, 2013."  Offering Memo. at 64.  Plaintiffs cannot have been misled about a fact that was disclosed in the Offering Memorandum.

---

[4] Plaintiffs also allege that the RIM Defendants "misled Plaintiffs to believe that $500,000 had already been invested towards the RIM Offering" when, "[i]n reality, the $500,000 referenced in the Offering Memorandum consisted of Gunn's equity investment."  SAC ¶ 81; *see also id.* ¶ 64.  Plaintiffs do not identify which statements, in particular, were misleading on this score.  The Offering Memorandum does not state that Gunn's $500,000 investment was made pursuant to the Offering and, in fact, the Offering Memorandum's discussion of his investment belies such an interpretation.  Plaintiffs do not explain how Gunn's $500,000 investment could have been made pursuant to the Offering if the document commencing the Offering stated that this investment already had been received.  *See* Offering Memo. at 5, 35.

   3.  *Alleged Misrepresentations Regarding the Interest Reserve*

  Plaintiffs allege that $500,000 of the first $1.5 million raised in the Offering was

earmarked "as interest reserve to service the debt obligations, i.e. the Notes," but it was not used

in that manner, making this statement a misrepresentation. SAC ¶ 56. The "Use of Proceeds"

table where the "Interest Reserve" appears provides that, if the Offering closed above $1.5

million and below $5.5 million, $500,000 of the proceeds would be allocated to an "Interest

Reserve." Offering Memo. at 20. The term "Interest Reserve" is not defined anywhere in the

document, but Plaintiffs assume, without explanation, that it refers to repaying noteholders like

themselves. This assumption, while not necessarily unreasonable on its face, directly contradicts

the Offering Memorandum's description of how noteholders will be repaid. *See* Offering Memo.

at 5 ("The Company intends to repay the Notes with the proceeds of a construction loan.").

Therefore, the RIM Defendants' motion to dismiss this aspect of Plaintiffs' § 10(b) claim is

granted and the portion of Plaintiffs' claim based this alleged misrepresentation is dismissed.

   4.  *Alleged Failure to Disclose that RIM Previously Had Failed to Close on*
      *the Property*

  Plaintiffs allege that the RIM Defendants did not disclose in the Offering Memorandum

that RIM previously had failed to close on the sale of the Property on March 4 and 7, 2013. SAC

¶ 71. Plaintiffs contend that this was a material omission because "it would have called into

question the financial backing of the project." *Id.* The RIM Defendants argue that the Court

should dismiss this claim because it is contradicted by the terms of the Offering Memorandum,

not because such a disclosure was made in the Offering Memorandum, but because the

assignment to RIM of the purchase and sale agreement for the Property was included in the

Offering Memorandum and reflects that Gunn did not assign it to RIM until April 11, 2013.

RIM Defs.' Memo. at 11 (citing Offering Memo. at 80).  Therefore, they argue, RIM could not have failed to close on the Property in March, as Plaintiffs allege.  *Id.*

Unlike the RIM Defendants' other arguments regarding allegations contradicted by the Offering Memorandum, here, the RIM Defendants are offering the document for the truth of the statement it contains.  For their argument to hold, the Court would have to find that RIM did not, in fact, have the ability to close on the Property before April 11, 2013, based on the date of the assignment by Gunn.  Such a finding is impermissible on a motion to dismiss.  The Offering Memorandum "may properly be considered only for 'what' [it] contain[s], 'not to prove the truth' of [its] contents."  *Roth*, 489 F.3d at 511 (quoting *Kramer*, 937 F.2d at 774).  Accordingly, this aspect of the RIM Defendants' motion to dismiss is denied.

### 5.  *Alleged Misrepresentation Regarding the Security Interest*

The RIM Defendants make two arguments in support of their motion to dismiss Plaintiffs' § 10(b) claim based on the alleged failure to receive a secured promissory note as provided in the Offering Memorandum.  RIM Defs.' Memo. at 12-13.  First, they again assert that Plaintiffs' claim is contradicted by the terms of the Offering Memorandum.  Second, they argue that Plaintiffs failed to plead loss causation.  While Plaintiffs' claim does not contradict the Offering Memorandum, Plaintiffs have not pleaded loss causation, and accordingly, this aspect of Plaintiffs' § 10(b) claim is dismissed.

Plaintiffs' claim is not contradicted by the terms of the Offering Memorandum.  Plaintiffs allege that the promissory notes they received omitted the paragraph appearing in the form promissory note that stated the note was "secured by a security interest in all of the assets of the Borrower, as evidenced by Lender's execution and delivery of the Lender Counterpart Signature Page to [the] Security Agreement."  SAC ¶ 69 (quoting Offering Memo. at 61).  Contrary to the RIM Defendants' contention, that the "Form of Promissory Note" in the Offering Memorandum

included this paragraph does not mean that the executed promissory notes Plaintiffs received automatically contained the same paragraph regardless of the actual terms of the notes. *See* Offering Memo. at 33. The RIM Defendants have not cited any cases in support of their proposition that the terms of a form agreement are binding even though the executed agreement does not contain those same terms.

While, as the RIM Defendants' correctly note, based on the omitted language, it is the security agreement, not the promissory note, which grants Plaintiffs a security interest in RIM's assets, *see* RIM Defs.' Memo. at 12, Plaintiffs allege that "Sichenzia did not deliver signed Security Agreements to Plaintiffs granting them a security interest in the Property as called for under the Offering Memorandum." SAC ¶ 70. Plaintiffs are somewhat unclear as to whether RIM, in fact, failed to sign the security agreements, alleging only that Sichenzia did not provide Plaintiffs with signed agreements and "did not obtain signed Security Agreements from RIM for Plaintiffs prior to releasing the investment funds." SAC ¶ 70. Drawing all reasonable inferences in Plaintiffs' favor, however, the Court will assume, for present purposes, that the security agreements were not executed by RIM. In the absence of a fully executed security agreement or a paragraph in the promissory notes providing that partial execution by Plaintiffs suffices to create a security interest, it appears that Plaintiffs did not receive the promised security interest in RIM's assets.[5]

The RIM Defendants also argue that Plaintiffs' allegations regarding their security interests do not adequately plead loss causation because Plaintiffs acknowledge that RIM has no assets on which to foreclose, making any security interest worthless. RIM Defs.' Memo. at 13;

---

[5] It may be possible for the parties to offer facts that would allow them to prove the enforceability of partially executed security agreements, but this question cannot be resolved on a motion to dismiss based on the allegations in the SAC. *See Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80-81 (2d Cir. 1985) (discussing factors for courts to consider regarding enforceability when parties have not entered into fully executed written agreement).

*see also* SAC ¶ 74.  Loss causation is similar to the concept of proximate cause in tort law; that is, to plead loss causation, a plaintiff must show "the causal link between the alleged misconduct and the economic harm ultimately suffered." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003).  The inability to foreclose on RIM's assets could not have caused the harm that Plaintiffs seek to remedy by this action because, as Plaintiffs concede, the security interest is worthless because RIM has no assets.  Accordingly, this aspect of Plaintiffs' § 10(b) claim is dismissed.

    **B.**    **Allegations Regarding Misappropriation of Investments Do Not Satisfy the Heightened Pleading Standard**

Plaintiffs allege that the "Use of Proceeds" section of the Offering Memorandum generally misrepresented how investments would be allocated.  They plead, on information and belief, that, after their investments were released from escrow to RIM Investment Group, some unspecified portion of those funds then was transferred to accounts controlled by Entler and Morgan, a portion of which Entler then used to pay "fees and expenses related to an entirely separate real estate transaction," for an entity managed by Morgan.  SAC ¶ 73.  Plaintiffs contend that, as a result of these transfers, the Offering Memorandum misrepresented how Plaintiffs' investments would be allocated in the "Use of Proceeds" table, which did not contemplate expenses unrelated to the purpose of the Offering.  *See* SAC ¶ 83.  Defendants argue that this claim must be dismissed because it fails to satisfy the heightened pleading requirements of the PSRLA.

Under the PSLRA, not only must a plaintiff specify the "reason or reasons why the statement is misleading," but where "an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  To satisfy this requirement, a plaintiff "must

identify sufficiently the sources upon which [plaintiffs'] beliefs are based and those sources must

have been likely to have known the relevant facts." *In re Pfizer, Inc. Sec. Litig.*, 538 F. Supp. 2d

621, 628 (S.D.N.Y. 2008) (citation and internal quotation marks omitted) (alteration in original).

A plaintiff may "provid[e] documentary evidence and/or a sufficient general description of the

personal sources of the plaintiffs' beliefs." *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000).[6]

      Courts evaluating misrepresentations pleaded on information and belief under the PSLRA

often focus on the sufficiency of the source of a plaintiff's information. *See, e.g., Emps.' Ret.*

*Sys. of Gov't of Virgin Is. v. Blanford*, 794 F.3d 297, 307 (2d Cir. 2015) (finding that complaint

sufficiently identified confidential witnesses by "position, length of employment, and job

responsibilities"); *Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 485-86 (S.D.N.Y. 2009)

(dismissing § 10(b) claim where anonymity of source of alleged facts made court "wholly unable

to determine whether this source was in a position to know what he is alleged to have told [third

party]"), *aff'd sub nom. Thesling v. Bioenvision, Inc.*, 374 F. App'x 141 (2d Cir. 2010); *In re*

*Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 689-93 (S.D.N.Y. 2008) (evaluating claims

supported by personal and documentary sources).   Here, by contrast, Plaintiffs have not

identified any source—documentary or personal—of their information and belief regarding these

alleged inappropriate money transfers, let alone a source that the Court could determine was

"likely to have known the relevant facts."   Therefore, Plaintiffs' § 10(b) claim based on the

---

[6] Similarly, allegations of fraud based on a plaintiff's information and belief generally do not satisfy Rule 9(b) unless those facts are "peculiarly within the opposing party's knowledge." *Luce v. Edelstein*, 802 F.2d 49, n.1 (citation and internal quotation marks omitted); *see also Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 517 (S.D.N.Y. 2016).  Even then, however, "the allegations must be accompanied by a statement of the facts upon which the belief is founded." *Luce*, 802 F.2d at n.1; *see also Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 348 (E.D.N.Y. 2014) (explaining that "financial information supporting the allegations of fraud are typically in the possession of the party that allegedly engaged in a fraudulent scheme," but "this inevitability" does not supplant Rule 9(b)'s pleading requirements).  While Plaintiffs' allegations regarding what the RIM Defendants did with Plaintiffs' investments may be within the exclusive knowledge of the RIM Defendants and, perhaps, third parties, Plaintiffs have not alleged, except on information and belief, the facts upon which their belief as to these transfers is founded.

alleged misappropriation of their investments is dismissed with leave to replead to remedy the deficiencies identified.

### C.   Alleged Failure to Disclose that the Purchase Option on the Property Expired Without Closing Lacks Transaction Causation

Plaintiffs also allege that the RIM Defendants "had a duty to disclose that the option to purchase on the Property had expired without closing," and their failure to disclose that fact resulted in Plaintiffs' "continued reliance on the statements and promises contained in the Offering Memorandum," which, in turn, allowed the RIM Defendants "to continue siphoning away" Plaintiffs' money out of escrow. SAC ¶ 80. The RIM Defendants assert that this allegation fails for lack of transaction causation because any alleged failure to make this disclosure took place after Plaintiffs invested in the Offering. RIM Defs.' Memo. at 11-12. The Court agrees, and Plaintiffs' § 10(b) claim based on this allegation is dismissed.

To adequately plead transaction causation—also referred to as the reliance element of a securities fraud claim—a plaintiff must allege that there was a causal connection "between the defendant's misconduct and the plaintiff's decision to buy or sell securities." *Emergent Capital*, 343 F.3d at 197. Stated differently, transaction causation requires a plaintiff to allege that, "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Id.* Accordingly, where, as here, a plaintiff alleges that the misrepresentation or omission was made after the securities transaction at issue in the complaint, that plaintiff has not pleaded transaction causation. *See, e.g.*, *Wilson v. Dalene*, 699 F. Supp. 2d 534, 560 (E.D.N.Y. 2010) (plaintiff failed to plead transaction causation where alleged misrepresentation occurred several years after securities transaction at issue); *Ernst & Co. v. Marine Midland Bank, N.A.*, 920 F. Supp. 58, 61 (S.D.N.Y. 1996) (same).

Plaintiffs do not identify any causal connection between their decision to invest in the Offering and the failure to disclose that the purchase option on the Property had expired. They do not allege that they invested in the Offering after the purchase option on the Property expired, and Plaintiffs could not have relied on the failure to disclose an as-yet to occur fact when making the decision to invest. Nor do Plaintiffs include any allegations regarding a sale of their interests in the Offering made after the alleged non-disclosure. Therefore, Plaintiffs have not alleged facts sufficient to support an allegation of transaction causation and this aspect of their § 10(b) claim is dismissed.

### D.   Plaintiffs Have Not Pleaded Scienter With Respect to Certain Alleged Misrepresentations and Omissions

The RIM Defendants also argue that Plaintiffs failed to adequately plead scienter as required under the PSLRA and the law of this Circuit. While the RIM Defendants discuss scienter in the context of Plaintiffs' overarching allegation that the RIM Defendants initiated the Offering without any intent to purchase the Property, their arguments as to the lack of scienter are general, *see* RIM Defs.' Memo. at 16-23, and the Court also will consider whether the only alleged misrepresentation not otherwise dismissed for the reasons discussed above should be dismissed as a result of Plaintiffs' failure to plead scienter.

Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "The requisite state of mind in a Rule 10b-5 action is 'an intent to deceive, manipulate or defraud.'" *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 168 (2d Cir. 2000) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n.12 (1976)).

To satisfy the PSLRA's pleading requirements for scienter, a plaintiff must allege facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or

(2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns*, 493 F.3d at 99. In evaluating whether either of these showings has been made, the court may consider, among other factors, whether the plaintiff has alleged that the defendant "(1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not accurate; or (4) failed to check information they had a duty to monitor." *Novak*, 216 F.3d at 311 (internal cross references omitted).

Here, Plaintiffs contend that they have sufficiently alleged scienter under both the "motive and opportunity" theory and by alleging strong circumstantial evidence of the RIM Defendants' "conscious misbehavior or recklessness," specifically by asserting that the RIM Defendants "knew facts or had access to information suggesting that their public statements were not accurate." ECF No. 73 (Plaintiffs' Memorandum of Law in Opposition to RIM Defendants' Motion to Dismiss ("Pls.' RIM Memo.")), at 9.

First, Plaintiffs have not alleged sufficient facts to support a finding that the RIM Defendants had both a motive and opportunity to commit fraud. The RIM Defendants do not contest that they may have had the opportunity to commit fraud, but assert that the SAC fails to allege motive. RIM Defs.' Memo. at 18 & n.110. Plaintiffs base their entire argument regarding motive on the improper transfer of funds to accounts held by Entler and Morgan, which the Court has held failed to satisfy the PSLRA. *See* Pls.' RIM Memo. at 9. Accordingly, in their current iteration, these allegations cannot form the basis of a claim that the RIM Defendants experienced a "concrete and personal benefit . . . resulting from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).

Second, Plaintiffs have alleged facts constituting "strong circumstantial evidence" of the RIM Defendants' conscious misbehavior or recklessness, but only with respect to one of the alleged misrepresentations. The question of whether facts alleged in a complaint support the claim that a defendant acted with conscious misbehavior or recklessness "is a highly fact-based inquiry." *Kalnit*, 264 F.3d at 142. However, in securities fraud claims, courts often consider whether the defendants had "knowledge of facts or access to information contradicting their public statements." *Id.* (citation omitted). This common factual scenario is the one on which Plaintiffs rely. Pls.' RIM Memo. at 9. Of the alleged misrepresentations and omissions that the Court has not otherwise dismissed for failure to properly plead one or more of the required elements, the following allegations remain: (1) RIM failed to close on the Property on two earlier occasions, but did not disclose that fact; and (2) the RIM Defendants did not intend to use the proceeds of the Offering to buy and develop the Property.

With respect to Plaintiffs' claim regarding RIM's earlier failures to close on the Property, Plaintiffs have alleged sufficient facts to support the allegation that RIM knew about these previous closings, but did not disclose them. SAC ¶ 71. Implicit in the allegation that RIM failed to close on the Property is the allegation that RIM and Morgan, as one of its managing members, knew about those failures. This allegation establishes scienter with respect to these two Defendants sufficient to withstand a motion to dismiss. *See, e.g., Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 622 (S.D.N.Y. 2008). The Court also finds that the resulting inference of scienter is "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc.*, 551 U.S. at 324. The RIM Defendants' only argument regarding the previous failed closings is that RIM did not, in fact, fail to close on the Property; however, assuming the truth of the allegations in the SAC, as the Court must for

present purposes, RIM and Morgan must have known about the failed closings as a result of their participation in them. But it does not also follow that Defendants other than RIM and Morgan knew about the previous failed closings. Accordingly, scienter has not been established with respect to the remaining RIM Defendants—RIM Investment Group, Bighorn Capital, and Entler—whose relationship, if any, with RIM prior to the Offering Plaintiffs have not alleged.

By contrast, Plaintiffs have failed to allege scienter in connection with the claim that the RIM Defendants did not intend to develop the Property. This alleged misrepresentation is, in effect, an allegation that the RIM Defendants made certain promises in the Offering Memorandum that, ultimately, they did not perform. It is well-established that "[t]he failure to carry out a promise made in connection with a securities transaction . . . does not constitute fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993); *accord Capital Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214, 226 (2d Cir. 2012) (collecting cases).

Plaintiffs have failed to allege any facts probative of the RIM Defendants' intent at the time they made the alleged promises by issuing the Offering Memorandum. Plaintiffs allege generally that the RIM Defendants "failed to take any steps to purchase the Property or move forward with the joint venture," but do not provide any specific allegations that would allow the Court to find the requisite contemporaneous intent. SAC ¶ 61. The facts Plaintiffs allege in this regard do not, by virtue of their timing, support an inference of scienter at the time the Offering Memorandum was issued. *See Mills*, 12 F.3d at 1176 (actions taken after alleged promise are not probative of earlier intent). First, the RIM Defendants' alleged failure to inform Plaintiffs on May 15, 2013 that the purchase option on the Property expired without closing does not bear on

the RIM Defendants' knowledge and intent in April 2013 when the Offering began. *See* SAC ¶ 80. Similarly, the RIM Defendants' decision not to agree to an extension of the purchase and sale agreement on the Property even later in time, on May 28, 2013, does not lend itself to any "cogent or compelling" inference of their intent a month and a half earlier. *See* SAC ¶ 62. This is particularly true because, as the RIM Defendants' note, the Offering Memorandum precluded RIM from using any investor money to pay for such an extension. *See* RIM Defs.' Memo. at 20-21 (citing Offering Memo. at 20). Moreover, the Offering Memorandum made it clear to investors that RIM may not be able to purchase the Property, making the more compelling inference that the RIM Defendants simply were unable to secure sufficient financing for the real estate venture. *See, e.g.*, Offering Memo. at 20 (explaining that, upon reaching the $1.5 million minimum offering amount, no money would be allocated towards purchase price of Property); *id.* at 10 ("We cannot assure you that we will be able to achieve our goals without additional capital or that we will be able to raise additional capital if required.").

Nor do Plaintiffs explain how their allegation that RIM continued to solicit investments up to the closing of the Offering supports an inference of scienter. *See* SAC ¶ 63. Rather, the opposite inference is readily apparent; an offeror's decision to solicit funds prior to the closing of an offering is a legitimate business activity and to be expected.

Accordingly, the portion of Plaintiffs' § 10(b) claim based on the RIM Defendants' intent not to purchase the Property is dismissed.

## II.   State and Common Law Claims

Plaintiffs also assert numerous state and common law causes of action against Defendants. Sichenzia moved to dismiss the claims asserted against it on substantive grounds. The RIM Defendants, however, argue only that the Court lacks subject matter jurisdiction over

the state law claims, assuming the § 10(b) claim is dismissed in its entirety, which it is not. Accordingly, the RIM Defendants' motion to dismiss the state and common law claims asserted against them is denied. The Court will address only Plaintiffs' claims against Sichenzia in this section.

Plaintiffs allege that all Defendants, including Sichenzia, violated the securities laws of Texas, Florida, Pennsylvania, Illinois, North Carolina, North Dakota, and Maryland. In addition, Plaintiffs allege common law claims against Sichenzia for breach of the escrow agreement, breach of fiduciary duty, fraud, aiding and abetting fraud, negligence, and also seek a constructive trust. The factual bases for the claims against Sichenzia fall into four categories: claims based on (1) the release of Plaintiffs' funds from escrow before the conditions precedent were met, particularly (a) the Offering reaching the Minimum Offering Amount; and (b) the receipt of fully executed security agreements and promissory notes; (2) the release of Plaintiffs' funds to RIM Investment Group, LLC, which was not a party to the escrow agreement; (3) the delay in sending promissory notes to Plaintiffs following the closing; and (4) the failure to include a security interest provision in Plaintiffs' promissory notes. SAC ¶¶ 66-70.

As a preliminary matter, for the reasons discussed in Part I.A.1., *supra*, Plaintiffs' claims against Sichenzia cannot be based on the alleged failure to meet the Minimum Offering Amount because that threshold was reached in a manner consistent with the terms of the Offering Memorandum. Sichenzia's breach of escrow agreement claim appears to be based exclusively on Sichenzia's alleged failure to confirm that the Minimum Offering Amount had been received prior to releasing Plaintiffs' funds from escrow. *See* SAC ¶¶ 145-47. Therefore, that claim is

dismissed.  To the extent Plaintiffs' other claims are based, in part, on this alleged conduct, this

aspect of those claims also is dismissed and will not be addressed further below.[7]

### 1.    *Breach of Fiduciary Duty*

To state a claim for breach of fiduciary duty in New York, a plaintiff must allege "(i) the

existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting

therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citing *Barrett*

*v. Freifeld*, 64 A.D.3d 736, 739, 883 N.Y.S.2d 305, 308 (2d Dep't 2009)).  It is well-established

that "an escrow agreement creates a fiduciary relationship between the escrow agent and the

parties to the escrow transaction." *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704,

728 (S.D.N.Y. 2014) (citing *Greenapple v. Capital One, N.A.*, 92 A.D.3d 548, 549, 939

N.Y.S.2d 351, 352-53 (1st Dep't 2012)).  Given that the fiduciary duties of an escrow agent are

born of a contractual relationship, if an escrow agent has "acted in accordance with its

obligations under the escrow agreement, it has not breached its fiduciary duty." *Id.* at 729; *see*

*also Qube Films Ltd v. Padell*, No. 13-cv-8405 (AJN), 2016 WL 881128, at *4 (S.D.N.Y.

Mar. 1, 2016) ("The scope of an Escrow Agent's fiduciary duty is defined by the scope of its

contractual duty under the Escrow Agreement.").

Plaintiffs allege that Sichenzia breached its fiduciary duties by failing to "investigate or

ensure that the proper subscription and other agreements had been properly executed prior to

breaking escrow."  SAC ¶ 151.  Interpreted liberally, Plaintiffs' reference to "proper subscription

and other agreements" appears to be an allusion to their allegations that Sichenzia failed to

receive fully executed security agreements from RIM prior to releasing funds and that the

---

[7]    The escrow agreement giving rise to the relationship between Plaintiffs and Sichenzia includes a choice of law provision selecting New York as the governing law and both Plaintiffs and Sichenzia cite to New York law with respect to Plaintiffs' common law claims. *See* Anesh Declaration, Ex. C ("Escrow Agreement"), at art. 2.6. Accordingly, the Court will apply New York law to Plaintiffs' common law claims.

promissory notes provided to Plaintiffs did not include a security interest. *See id.* ¶ 70. The SAC does not include any allegations regarding improprieties with respect to the subscription agreements. Plaintiffs also allege elsewhere in the SAC that Sichenzia improperly disbursed the funds from escrow to RIM Investment Group, which was not a party to the escrow agreement. *See id.* ¶¶ 66, 151.

With respect to Plaintiffs' first argument—that Sichenzia failed to ensure that certain agreements had been fully executed or properly drafted prior to releasing funds from escrow—Sichenzia argues that there is nothing in the escrow agreement that required it to confirm that the security agreement was signed or that the executed promissory note was the same as the form version in the Offering Memorandum. ECF No. 66 (Sichenzia's Memorandum of Law in Support of the Motion to Dismiss ("Sichenzia Memo.")), at 9-11. Sichenzia is correct. Under the escrow agreement, Sichenzia's only duty with respect to releasing the funds from escrow was to ensure that the "written instructions" from RIM and John Carris were "in a form and substance satisfactory to [Sichenzia]." Escrow Agreement, art. 1.4. Plaintiffs rely on the provision in the escrow agreement that allows Sichenzia to request "other or further instruments" in connection with the performance of its duties, but this provision does not create an additional obligation to request the security agreements or promissory notes that Sichenzia otherwise was not required to review before releasing the funds from escrow. *See* ECF No. 74 (Plaintiffs' Memorandum of Law in Opposition to Sichenzia's Motion to Dismiss ("Pls.' Sichenzia Memo.")), at 12 (citing Escrow Agreement, art. 2.13).

Because the escrow agreement defines the scope of Sichenzia's fiduciary duties to Plaintiffs, in the absence of any requirement regarding the security agreements or promissory notes, a breach of fiduciary duty cannot be based on any alleged failures with respect to those

documents. *See, e.g., Qube Films Ltd v. Padell*, 2016 WL 881128, at *4-5 (dismissing on summary judgment fiduciary claim where escrow agreement explicitly rejected any responsibility by escrow agent to confirm that conditions precedent had been met); *Carruthers v. Flaum*, 450 F. Supp. 2d 288, 317 (S.D.N.Y. 2006) (dismissing on summary judgment fiduciary claim where no evidence of instruction as to how escrow agent would use money); *Greenapple*, 92 A.D.3d 548 at 549-50 (reversing trial court's grant of motion to dismiss where escrow agreement explicitly conditioned release of funds on receipt of writing signed by parties, which was not received).

Plaintiffs' second argument—that Sichenzia improperly released the funds to RIM Investment Group, which was not a party to the escrow agreement—fails for the same reason. There is nothing in the escrow agreement that requires Sicheznia to deliver the escrowed funds to a particular account or account holder. *Cf. Qube Films Ltd*, 2016 WL 881128, at *5 (agreement identified specific entity to which escrowed funds should be disbursed funds, but escrow agent sent funds to other entities).

Therefore, Plaintiffs have failed to state a claim for breach of fiduciary duty against Sichenzia and Sichenzia's motion to dismiss this claim is granted.

### 2. *Negligence*

In New York, to state a claim for negligence, a plaintiff must allege: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002) (citing *Merino v. New York City Transit Auth.*, 218 A.D.2d 451, 457, 639 N.Y.S.2d 784, 787 (1st Dep't 1996)).

Rather than focus on any pleading failures with respect to Plaintiffs' negligence claim, Sichenzia argues that the claim should be dismissed because the escrow agreement eliminates its

liability unless the claims are based on Sichenzia's "gross negligence, fraud and willful misconduct." Sichenzia Memo. at 7 (quoting Escrow Agreement, art. 2.8). Plaintiffs respond that, even though they did not title their negligence claim as one for "gross negligence," the conduct giving rise to each of their common law claims "was fraudulent or constitutes willful misconduct and/or gross negligence." Pls.' Sichenzia Memo. at 10. The escrow agreement provides that Sichenzia cannot be liable "while acting in good faith and in the absence of gross negligence, fraud, and willful misconduct," but it does not limit the causes of action that can be brought. Escrow Agreement, art. 2.8. Accordingly, if Plaintiffs' negligence claim is based on conduct that constitutes gross negligence, fraud, or willful misconduct, the claim may survive.

Plaintiffs' negligence claim is deficient for a different reason, however. Plaintiffs allege that the basis for Sichenzia's duties to them is Sichenzia's position "[a]s escrow agent." SAC ¶ 158. As discussed above, Plaintiffs have failed to allege that Sichenzia breached any duty to them arising under the escrow agreement. This failure also is fatal to their negligence claim because the escrow relationship is the source of Sichenzia's duties for purposes of any negligence or gross negligence claim. When presented with similar circumstances, the district court in *H & H Acquisition Corp. v. Fin. Intranet Holdings*, 669 F. Supp. 2d 351, 363-64 (S.D.N.Y. 2009), simultaneously dismissed the plaintiff's claims for both breach of fiduciary duty and negligence. As the court explained, the plaintiff was improperly attempting to "unilaterally enlarge [defendant's] duties under the contract and then claim that [defendant] was negligent in failing to take these duties on." *Id.* at 364. Therefore, this cause of action is dismissed.

3.   *Fraud*

To successfully state a claim for fraud under New York law, a plaintiff must allege "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance,

justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009).  Plaintiffs plead their fraud cause of action generally as to all Defendants.  *See* SAC ¶¶ 122-32.  As to Sichenzia, in particular, the only factual allegation in the SAC that could support a fraud claim is that Sichenzia falsely stated to Plaintiffs that the promissory notes Sichenzia "delivered to them were 'the securities purchased from [RIM].'" SAC ¶ 69.  Plaintiffs assert that this statement was false because the promissory notes did not include the provision regarding a security interest in RIM's assets that was included in the form promissory note in the Offering Memorandum.  *Id.*  For the reasons discussed above, the Court declines to find, at this early stage, that the failure to include the paragraph regarding a security interest in RIM was not dispositive of Plaintiffs' security interest.  However, even assuming the falsity of Sichenzia's representation regarding the promissory notes, Plaintiffs have failed to allege that they reasonably relied on this misrepresentation.

Plaintiffs have not alleged, even in the most conclusory terms, that they relied on Sichenzia's misrepresentation.  The SAC is devoid of any allegations that Plaintiffs believed Sichenzia's statement regarding the promissory notes or that this belief caused Plaintiffs to take, or decline to take, any action as a result.  This is fatal to their claim.  *See SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173, 177-78 (2d Cir. 2016) (dismissing common law fraud claim where plaintiff failed to allege any action or inaction as a result of alleged misrepresentation); *Nabatkhorian v. Nabatkhorian*, 7 N.Y.S.3d 479, 481, 127 A.D.3d 1043, 1044 (2d Dep't 2015) ("The plaintiff must show a belief in the truth of the representation and a change of position in reliance on that belief"); *see also IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 140 (2009) (determining that plaintiff's breach of

fiduciary duty claim was not based on fraud because it asserted that defendant "attempted to deceive it," but did "not claim that it was actually duped").

A fair reading of the SAC suggests that Plaintiffs did not believe Sichenzia's statement regarding their promissory notes and, accordingly, could not have taken any action in reliance on that statement. Plaintiffs' basis for alleging the falsity of Sichenzia's statement is that the terms of the promissory note diverged from the terms of the form promissory note included in the Offering Memorandum. *See* SAC ¶ 69. However, Plaintiffs also allege that they received and reviewed the Offering Memorandum. SAC ¶ 50. The divergence between the two forms of the promissory note is apparent from the face of the documents.

Accordingly, Plaintiffs' claim for fraud against Sichenzia fails to adequately plead reliance, and the Court need not reach the other elements of the cause of action. Sichenzia's motion to dismiss Plaintiffs' fraud claim is granted.

### 4. *Aiding and Abetting Fraud*

To state a claim for aiding and abetting fraud in New York, a plaintiff must allege "(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (citation and internal quotation marks omitted) (alteration in original). The heightened pleading standard of Rule 9(b) applies to aiding and abetting fraud claims and, as a result, a plaintiff must plead with particularity facts supporting each element of the claim. *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014). Although knowledge, as compared to the other elements of an aiding and abetting fraud claim, "may be alleged generally" under Rule 9(b), "'generally' is merely 'a relative term' that allows knowledge to be pleaded with less particularity than is required for the pleading of fraud;

'generally' is not the equivalent of conclusorily." *Id.* (citing *Iqbal*, 556 U.S. at 686) (internal citation omitted).

In light of the RIM Defendants' motion to dismiss, the only fraud claim that remains viable to form the basis of an aiding and abetting claim does not implicate Sichenzia's involvement. For that reason alone, Plaintiffs' claim against Sichenzia could be dismissed. However, given that the Court will grant Plaintiffs leave to replead certain aspects of their § 10(b) claim, it makes sense to address the other pleading deficiencies in Plaintiffs' aiding and abetting claim against Sichenzia.

Plaintiffs allege that Sichenzia's unreasonable delay in sending Plaintiffs promissory notes which then did not contain a security interest in RIM's assets allowed the RIM Defendants' fraud to continue. SAC ¶¶ 68-70, 74, 155. Among other arguments, Sichenzia contends that Plaintiffs failed to plead with particularity any facts showing they had actual knowledge of the fraudulent scheme. Sichenzia Memo. at 14. The only facts that Plaintiffs specifically offer to demonstrate Sichenzia's knowledge regarding the fraud relate to Sichenzia's decision to release funds from escrow before the Minimum Offering Amount was received. *See* SAC ¶ 155. However, the Court already has determined that the Offering did achieve the Minimum Offering Amount as defined by the Offering Memorandum and, as a result, Sichenzia's awareness of that fact does not indicate any knowledge of fraud.

That Sichenzia allegedly did not send the promissory notes to Plaintiffs within the timeframe provided by the subscription agreement is not, without more, sufficient to support a strong inference that they had actual knowledge of the RIM Defendants' underlying fraudulent scheme. Nor does the fact that Sichenzia sent Plaintiffs promissory notes without a paragraph regarding the security interest nudge the inference from possible to plausible. *Lerner v. Fleet*

*Bank*, the only decision on which Plaintiffs rely in support of their aiding and abetting claim, resulted in the dismissal of the aiding and abetting claim in the face of far stronger facts in support of the allegation.  In *Lerner*, the defendant banks allegedly were aware that a fraudster had engaged in improper conduct that would warrant discipline by the state bar association, but the Second Circuit held that knowledge of improper conduct did not give rise to a strong inference "of actual knowledge of his outright looting of client funds," the fraud at issue.  459 F.3d at 293.

For these reasons, Sichenzia's motion to dismiss Plaintiffs' aiding and abetting fraud claim is granted.

### 5.    *State Securities Law Claims*

Plaintiffs also assert causes of action for securities fraud under the laws of Texas, Florida, Pennsylvania, Illinois, North Carolina, North Dakota, and Maryland.  Their state law securities claims are based on the same alleged misrepresentations and omissions underlying their § 10(b) and common law fraud claims.  However, Plaintiffs plead each of the state law claims as to all Defendants, generally, without articulating the theories under which particular Defendants are liable.  *See* SAC ¶¶ 88-121.  The lack of clarity as to Plaintiffs' theory (or theories) of liability is compounded by their failure to identify the specific provisions of each state's securities laws that they allege were violated.  Instead, they cite only the article or chapter governing the particular state's securities laws, generally.  However, each of the relevant state's laws varies as to the pleading requirements for, and propriety of, claims asserted against a defendant who is primarily liable for making the alleged misrepresentation, as compared to defendants who may be indirectly liable for such a misstatement or liable for aiding and abetting an underlying fraud.

Plaintiffs' decision not to specifically plead the state statutory provisions giving rise to their claims fails to satisfy the pleading requirements of Rule 9(b), as evidenced by Sichenzia's

difficulty to discern under which theory they are being held liable. The district court's decision

in *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260 (S.D.N.Y. 1991) is

instructive. There, the court dismissed as deficient causes of action asserted under several state's

securities laws where the plaintiffs failed to identify the statutes under which they were seeking

relief, instead identifying only the pertinent states combined with a claim for violation of

"Applicable State Securities Laws." 778 F. Supp. at 1270. While Plaintiffs in the instant action

actually named each state's securities statute, the lack of specificity is functionally the same.

Courts in this district have dismissed state securities law claims where the plaintiffs alleged with

even greater specificity the statutory basis for their claims. *See, e.g., Sedona Corp. v. Ladenburg

Thalmann & Co.*, No. 03-cv-3120 (LTS) (THK), 2005 WL 1902780, at *15 (S.D.N.Y. Aug. 9,

2005) (granting plaintiff leave to amend Pennsylvania securities law claim to include reference

to proper statutory provisions).

     In response to Sichenzia's motion to dismiss, Plaintiffs list specific state law provisions

that they contend give rise to either indirect liability or aiding and abetting violations, but this

also is not sufficient. *See* Pls.' Sichenzia Memo. at 6-7. In *Chrysler Capital*, the court

distinguished an earlier out-of-district decision in which the parties agreed that a letter from the

plaintiffs' counsel identifying the relevant statutory provisions satisfied Rule 9(b). 778 F. Supp.

at n.12 (discussing *Denny v. Carey*, 72 F.R.D. 574, 579 (E.D. Pa. 1976). Here, unlike in *Denny*,

the parties have not agreed that the statutes identified in Plaintiffs' opposition brief will suffice to

satisfy the pleading requirements of Rule 9(b) nor is the Court prepared to accept statements

outside of the pleadings for that purpose. Moreover, in their brief, Plaintiffs only cite the

statutory provisions that define securities fraud in each of the relevant states, not the provisions

that create a private right of action for a violation of the securities law. In certain states, more

than one provision creates a private right of action and the basis for liability available under each differs. *See, e.g., Fox Int'l Relations v. Fiserv Sec., Inc.*, 490 F. Supp. 2d 590, 602-06 (E.D. Pa. 2007) (discussing availability of claim for aiding and abetting securities fraud under two sections of Pennsylvania securities law). Therefore, Plaintiffs' state securities law claims are dismissed with leave to amend to identify the particular provisions under which Plaintiffs are seeking relief with respect to particular Defendants.

6.   *Constructive Trust*

In New York, a plaintiff must plead four elements to justify the imposition of a constructive trust: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment." *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (citation and internal quotation marks omitted). However, a court is not bound to these four elements as an "unyielding formula" because a constructive trust is a "flexible device." *Golden Budha Corp. v. Canadian Land Co. of Am., N.V.*, 931 F.2d 196, 202 (2d Cir. 1991) (citation omitted). Though flexible, because it is an equitable remedy, a constructive trust "should not be imposed unless it is demonstrated that a legal remedy is inadequate." *In re First Cent. Fin. Corp.*, 377 F.3d at 212 (quoting *Bertoni v. Catucci*, 117 A.D.2d 892, 895, 498 N.Y.S.2d 902, 905 (3d Dep't 1986)) (internal quotation marks omitted).

Sichenzia argues that Plaintiffs failed to allege that it was unjustly enriched because the only money Sichenzia received was for its services as an escrow agent, and therefore was proper. *See* Sichenzia Memo. at 16. The Court agrees that Plaintiffs have failed to allege unjust enrichment, but for a slightly different reason. Nowhere in the SAC do Plaintiffs allege that Sichenzia was enriched, unjustly or otherwise. Instead, both Plaintiffs and Sichenzia are relying—for opposite effect—on a document submitted by Sichenzia purporting to show that it

33

disbursed to itself $30,500 of the funds it received and held in escrow. Pls.' Sichenzia Memo. at 15; Sichenzia Memo. at 16; Anesh Decl., Ex. D (Funds Memorandum). However, this document is not properly before the Court on a motion to dismiss. The "funds memorandum" was not included as an exhibit to the SAC nor was it incorporated by reference. Moreover, Plaintiffs and Sichenzia are not offering the document for what it contains, but, rather, are using it improperly for the truth of its contents. *See Roth*, 489 F.3d at 510.

Unjust enrichment is considered the "most important" factor when deciding whether to impose a constructive trust because "the purpose of the constructive trust is prevention of unjust enrichment." *In re First Cent. Fin. Corp.*, 377 F.3d at 212 (quoting *Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978)) (internal quotation marks omitted); *see also Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir. 1999). As a result, even though the Court has discretion to be flexible in its application of the law supporting the imposition of a constructive trust, the failure to allege unjust enrichment is grounds for dismissal. Therefore, Sichenzia's motion to dismiss is granted and Plaintiffs' request for a constructive trust is dismissed as to Sichenzia.

## III.    Leave to Amend

As a general matter, leave to amend should be "freely given" when justice so requires. Fed. R. Civ. P. 15(a)(2). However, "[o]ne appropriate basis for denying leave to amend is that the proposed amendment is futile." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Any proposed amendment to bolster Plaintiffs' claims based on allegations that have been dismissed as a result of contradicting terms in the Offering Memorandum would be futile. *See Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002). Accordingly, Plaintiffs will not be granted leave to amend their claims based on: (1) the Minimum Offering Amount; (2) the Offering period or RIM's time to purchase the Property; and (3) the Interest Reserve.

## CONCLUSION

For the reasons set forth above, the RIM Defendants' motion to dismiss the Second Amended Complaint is GRANTED in part and DENIED in part.  Sichenzia's motion to dismiss is GRANTED.  Plaintiffs' claims are dismissed without prejudice except as noted.  The Court will hold a status conference in this matter on December 12, 2016, at 10:00 a .m.  The parties (and/or counsel) should appear in person in Courtroom 1306 at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY, on the date and time specified above.

**SO ORDERED.**

Dated: November 22, 2016
      New York, New York

                **ANDREW L. CARTER, JR.**
                **United States District Judge**